**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **HEATHER BRAZELL-HILL,** *et al.*, | : |
| | : **Case No. 2:17-cv-912** |
| **Plaintiffs,** | : |
| | : **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : |
| | : **Magistrate Judge Jolson** |
| | : |
| **HEAVEN PARSONS,** *et al.*, | : |
| | : |
| **Defendants.** | : |

**OPINION & ORDER**

This matter is before the Court on Defendants' Motion for Partial Summary Judgment ("Motion"). (ECF No. 40). Plaintiffs have responded, largely opposing this Motion. (ECF No. 46). For the reasons stated below, this Court **GRANTS in part and DENIES** in part Defendants' Motion.

## I.     BACKGROUND

Plaintiffs are Darren Hill, Heather Brazell-Hill ("Ms. Brazell-Hill"), and their daughter, Dahlia Brazell-Hill ("Dahlia"), who at the time of the events at issue in this case was a seventh-grade student at Morgan Junior High. In 2015, Dahlia Brazell-Hill took Bus 33 every day from her home in Malta, Ohio to school and back. (ECF No. 40 at 2-3). Defendant Heaven Parsons is the bus driver for this route and had been employed by Defendant Morgan Local School Board of Education ("Board") since 2011. *Id*. at 2. Defendant Doug Hughes was the Board's Director of Transportation and Maintenance and was responsible for the school district's entire transportation program, including the supervision of bus drivers like Ms. Parsons. *Id*. at 2. Defendant Ron Moore was employed by the Board as the Dean of Students at Morgan Junior High and was in charge for student discipline for all issues. *Id*. at 2-3.

On October 20, 2015, Dahlia was riding the bus home from school. Ms. Parsons was operating the vehicle on Upper Oil Springs Road close to Dahlia's home when the bus hit a bump and Dahlia was thrown from her seat. (ECF No. 40 at 3). After her head hit the ceiling of the bus, Dahlia fell to the floor. *Id*. Parsons continued to drive for approximately thirty seconds until she reached Dahlia's stop. (ECF No. 46 at 3).

Parsons then got out of her seat and moved to the back of the bus to check on Dahlia. *Id*. Parsons returned to her seat after Dahlia got off the bus, continued down the dead-end road and made a U-turn to travel back the way she came on Upper Oil Springs Road. On her way back, she was flagged down by Ms. Brazell-Hill. *Id*. Ms. Brazell-Hill asked Parsons to slow down since this was the third time that Dahlia had been hurt on the bus. *Id*. Parsons replied that she could slow down but that Dahlia needed to sit down and "not goof off on the bus" while she was operating it. *Id*. at 3-4.

That same day, Ms. Brazell-Hill contacted Doug Hughes, the transportation supervisor for the Board, and told him that Dahlia had been taken to the hospital to receive treatment for the accident. (ECF No. 46 at 4). Ms. Brazell-Hill also noted that she was getting messages from other parents saying "they have reported the same bus driver to you several times I think this should have been dealt with before my daughter got hurt!![sic]" *Id*.

After returning to school, Dahlia was disciplined for her conduct on the bus immediately prior to the accident. Just before Parsons hit the bump in the road, Dahlia and another student on had been standing on the bus. (ECF No. 40 at 3). When the bus approached the bump on Upper Oil Springs Road, however, both girls had been seated in the last row of the bus. *Id*. According to Plaintiffs, Dahlia, who is bi-racial but appears African American, was disciplined because of her race and not because she was standing on the bus. They point to the fact that her white classmate,

who was also standing on the bus with Dahlia, was not reprimanded or otherwise disciplined. (ECF No. 46 at 4). Mr. Hughes contacted Ms. Parsons at some point after the accident and recommended that Ms. Parsons issue a "Bus Conduct Form" regarding Dahlia's behavior on the bus. The Bus Conduct Form stated that Dahlia was asked to sit down but did not. (ECF No. 46 at 4). The parties dispute whether Mr. Hughes viewed the video footage before recommending the issuance of the Bus Conduct Form. Plaintiffs argue that the video of the bus ride shows that Dahlia was never asked to sit down and did not refuse any such instructions. *Id*. at 5. Defendants argue that Mr. Hughes did not know that the white student had also been standing up and had not reviewed the video footage of the incident. (ECF No. 40 at 4). Plaintiffs dispute this and argue that text messages between Mr. Hughes and Ms. Brazell-Hill indicate that he did view the video footage before recommending that Parsons issue the Bus Conduct Form. (ECF No. 46 at 14).

 Plaintiffs also claim that Dahlia was given a detention by the school for standing on the bus, a fact which Defendants dispute. (ECF No. 46 at 4). Defendants claims that after the Bus Conduct Form was completed, it was sent to the Dean of Students, Mr. Moore, who called Dahlia to his office to discuss the accident. According to Defendants, Mr. Moore only asked her if she was okay and inquired as to whether she was standing on the bus and did not discipline her. (ECF No. 40 at 4-5).

Plaintiffs thereafter brought suit against Parsons, Hughes, Moore, and the Board, alleging that Defendants violated their constitutional rights under the First and Fourteenth Amendments and also brought state law claims of negligence, assault, battery, and intentional infliction of emotional distress. (ECF No. 1). Defendants now move for summary judgment on counts one, two, three, five, six, and seven of Plaintiff's complaint, arguing there is no genuine issue of

material fact and that those claims can be decided as a matter of law. (ECF No. 40; No. 50).
Plaintiffs have responded, largely opposing Defendants' Motion. (ECF No. 46).

## II. STANDARD OF REVIEW

A motion for summary judgment is governed by the requirements of Federal Rule of Civil Procedure 56. Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

The party seeking summary judgment bears the initial burden of presenting law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If the moving party satisfies this initial burden, then the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992).

Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson*, 477 U.S. at 248. The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). The mere existence of a scintilla of evidence in support of the opposing party's position is not enough to survive summary judgment; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322 (quoting *Anderson*, 477 U.S. at 250).

Finally, in ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091 (1990). When deciding whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

### III.    LAW AND ANALYSIS

Defendants move for partial summary judgment on count one (§ 1983 substantive due process violation), count two (§ 1983 race discrimination), count three (§ 1983 First Amendment retaliation), count five (state law assault), count six (state law battery), and count seven (state law

intentional infliction of emotional distress) of Plaintiff's amended complaint. (ECF No. 40). Defendants argue that Plaintiffs have failed to raise a genuine issue of material fact as to these claims and that they are otherwise entitled to statutory and qualified immunity. *Id.*

Plaintiffs concede that summary judgment is proper on the federal civil rights claims and the state law intentional tort claims against the Board. (ECF No. 46 at 15). Defendants concede that a genuine issue of material fact exists as to the state law negligence claim brought in count four. (ECF No. 40 at 1). Accordingly, summary judgment as to counts 1, 2, 3, 5, 6, 7 is **GRANTED** as to Defendant Morgan Local School Board of Education.

What remains for consideration is Defendants' motion for summary judgment as to Plaintiffs' §1983 constitutional violation claims against Defendants Parsons, Moore, and Hughes, and the state law claims against Parsons.

### A.  Federal Constitutional Claims Against Parsons, Moore, and Hughes

Defendants argue they are entitled to qualified immunity on Plaintiffs' § 1983 claims because there is no genuine dispute that they violated Plaintiffs' constitutional rights and because the rights they are alleged to have violated are not clearly established. (ECF No. 40 at 13). Government officials acting in their official capacity are entitled to qualified immunity for discretionary acts which do not violate clearly established law that a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 813 (1982)). To assess whether an official should be cloaked with immunity from suit, a Court is required to engage in two-tiered inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). First, a court must determine whether, viewing the facts in the light most favorable to the plaintiff, she has shown that the defendant-official's conduct violated a constitutionally protected right. *Pearson v.*

*Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816, 172 L. Ed. 2d 565 (2009). Second, the court must determine whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right. *Id*. The Court can consider the prongs in any order, and if either is not met, then the officer is entitled to qualified immunity. *Id.; see also Doe v. Miami Univ.*, 882 F.3d 579, 604 (6th Cir. 2018) (internal citations omitted).

While Defendants, as the summary judgment movants, must show that no genuine issues of material fact exist as to the first prong, Plaintiffs are required to point to law that would support their claim on the second prong that the Defendants violated "a clearly established right of which a reasonable person would have known." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995). Accordingly, this Court will first determine whether the rights that Plaintiffs allege were violated where clearly established pursuant to the second prong, before turning to the merits inquiry under the first prong of whether there is a genuine dispute of fact as to whether these rights were violated.

Defendants argue that each of the individually named Defendants is entitled to qualified immunity on count one (substantive due process violation), count two (equal protection violation), and count three (first amendment retaliation) since there is not law that would place Mr. Moore, Mr. Hughes, or Ms. Parsons on notice that their conduct as it relates to this case violated the United States Constitution. (ECF No. 40 at 14). Plaintiffs argue that there is clearly established law that would have given all three Defendants fair notice and warning that their conduct would violate established law. (ECF No. 46 at 12).

### 1. Count 1 – Substantive Due Process

#### a. *Clearly Established*

To be "clearly established," the right "must be so clearly established in a particularized sense that a reasonable officer confronted with the same situation would have known that his conduct violated that right." *Jones v. Clark Cty., Kentucky*, No. 19-5143, 2020 WL 2520267, at *12 (6th Cir. May 18, 2020). In framing the clearly established law inquiry, the Court is required to take the facts in the light most favorable to the non-moving party. *Wenk v. O'Reilly*, 783 F.3d 585, 599 (6th Cir. 2015) (citing *Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 412 (6th Cir. 2011)). A court is required to "zoom in close enough to ensure the right is appropriately defined: instead of stating it at a high level of generality, [courts are required to] go down the stairs of abstraction to a concrete, particularized description of the right." *Martin v. City of Broadview Heights*, 712 F.3d 951, 960 (6th Cir. 2013) (internal quotation marks omitted). A court, however, should be careful not to define the right too narrowly, since doing so "defeats the purpose of § 1983." *Jones*, No. 19-5143, 2020 WL 2520267, at *12.

In count one of their complaint Plaintiffs allege a substantive due process violation against Parsons and Hughes. (ECF No. 1 at 8). In opposing Defendants' Motion for Summary Judgment, Plaintiffs focus their claim solely on Parsons' conduct, arguing that Parsons violated Dahlia's rights by intentionally driving the bus in a manner that would and did lead to Dahlia's injury. (ECF No. 46 at 13). Accordingly, summary judgment on this claim is **GRANTED** as to Defendant Hughes, since Plaintiffs appear to have abandoned their claim. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (noting "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

To demonstrate clearly established law on the substantive due process violation, Plaintiffs point to *Webb v. McCullough*, 828 F.2d 1151 (6th Cir. 1987). (ECF No. 46 at 13). Plaintiffs

8

argue that the law is clearly established that school children have a substantive due process right to bodily security and that "intentionally or recklessly catapulting a twelve-year-old child into the roof of the bus would . . . violate her substantive due process rights." *Id*. In *Webb*, the Sixth Circuit determined that summary judgment was inappropriate on a student's substantive due process claims where a school official had slapped a student on a school trip and there was a genuine dispute of fact as to whether the slap was disciplinary in nature or not. 828 F.2d at 1159 (denying summary judgment because "it is possible that the blows were not disciplinary in nature, a trier of fact could find that under the circumstances, McCullough's need to strike Webb was so minimal or non-existent that the alleged blows were a brutal and inhumane abuse of McCullough's official power, literally shocking to the conscience."). Defendants argue that *Webb* is inapplicable, characterizing the conduct at issue more narrowly and arguing that "Plaintiffs have failed to cite to a single case that would establish that a student's right to substantive due process are [sic] violated when the student is injured due to alleged negligent driving by the bus driver." (ECF No. 50 at 11).

Whether Ms. Parsons' driving is negligent or intentional is a fact issue and not suitable for establishing the framework for whether there is clearly established law. It is true that negligent driving is insufficient to establish a substantive due process violation. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S. Ct. 1708, 1718, 140 L. Ed. 2d 1043 (1998) (noting "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). When formulating the clearly established law inquiry at the summary judgment stage, however, a court is required to take the facts in the light most favorable to the plaintiffs and assume their version of events is true. *See Wenk v. O'Reilly*, 783 F.3d 585, 599 (6th Cir. 2015).

As a general matter, the Sixth Circuit recognizes that substantive due process doctrine protects students against abusive governmental power as exercised by school officials. *See Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 506 (6th Cir. 1996) (citing *See Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir.1996). Here, Plaintiffs allege that Parsons intentionally struck the pothole knowing it would cause Dahlia to be catapulted from her seat and injured. When the clearly established law inquiry is framed to consider whether a school official's intentional conduct is aimed to cause injury, the law is clearly established. A reasonable bus driver in Parsons' position is on notice that conduct intended to harm a student would violate Dahlia's rights. *H.M. v. Bd. of Educ. of the Kings Local Sch. Dist.*, 117 F. Supp. 3d 992, 1005 (S.D. Ohio 2015) (noting "the right to be free from excessive corporal punishment in the school setting, particularly where it is not administered for any pedagogical purpose, is clearly established").

### b.  *Violation of Constitutional Right*

Defendants argue that Parsons, Hughes, and Moore are entitled to qualified immunity because Plaintiffs have failed to raise a genuine issue of material fact as to whether Defendants violated Plaintiffs' constitutional rights. (ECF No. 40 at 7, 14). Plaintiffs oppose summary judgment, arguing that there is sufficient evidence to raise a genuine issue of material fact as to their claims for violations of their constitutional rights. (ECF No. 46 at 5).

Plaintiffs clarify that their substantive due process claim is based solely on Parsons' conduct while driving the bus and argue that summary judgment is improper since Parsons injured Dahlia intentionally.  (ECF No. 46 at 5-6). Plaintiffs add that even if Parsons did not do so intentionally, a substantive due process violation can be found where the conduct is reckless or grossly negligent. Defendants argue that summary judgment is proper on this claim since there

is no substantive due process liability for negligence or gross negligence and there is no evidence that Parsons intentionally injured Dahlia. (ECF No. 50 at 6).

To avoid expanding substantive due process doctrine into a "font of tort law" the Sixth Circuit and the Supreme Court have set a high bar for the requisite culpability to establish a substantive due process violation. *Jane Doe v. Jackson Local Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 933 (6th Cir. 2020). A government official's conduct violates the Due Process Clause only if it is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 fn. 8 (1998) (finding no substantive due process violation where a police officer involved in high speed car chase did not intend to harm fleeing suspect). While negligent conduct "will never shock society's conscience" and "conduct unjustifiably intended to injure is the most likely to rise to the conscience-shocking level," the Supreme Court and the Sixth Circuit take a "case-by-case approach for public actors who cause harm with a state of mind falling in between these extremes—such as actors who are deliberately indifferent to the risk of a private party's harm." *Jane Doe*, 954 F.3d at 933. A government official's "deliberate indifference can at times support liability if a public official injures (or fails to protect) someone that the government has taken into custody." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 835–38 (1994)). Where a government official is required to make a hasty decision, however, actual intent to injure is required. *Lewis*, 523 U.S. at 852–53.

In the Sixth Circuit, courts consider three factors when determining the appropriate standard of culpability required for violations of substantive due process:

> (1) the voluntariness of the relationship between the government and the plaintiff, especially whether the plaintiff was involuntarily in government custody or was voluntarily a government employee; (2) whether the executive actor was required to act in haste or had time for deliberation; and (3) whether the government actor was pursuing a legitimate governmental purpose.

*Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 536 (6th Cir. 2008). While Plaintiffs cannot succeed on the first prong since Dahlia was not required by law to take the bus,[1] the remaining two prongs indicate that a deliberate indifference or recklessness standard is appropriate in this case. There is no evidence that Ms. Parsons' driving decisions were motivated by a situation in which she was required to make hasty decisions and there is no evidence that Ms. Parsons' driving was motivated by a legitimate governmental purpose. Accordingly, Plaintiffs can proceed with a deliberate indifference standard on their substantive due process violation claim.

Defendants argue that there is no evidence that Ms. Parsons injured Dahlia intentionally, no evidence as to how fast the bus was travelling when it hit the bump, and no evidence as to the speed limit on the road. (ECF No. 50 at 6). Plaintiffs argue, however, that they have presented sufficient evidence of intent by pointing to the surveillance footage from the bus as evidence that Parsons was driving at an alarming speed and took no measures to slow down or evade the bump. (ECF No. 46 at 7). They also point to Parsons' deposition testimony indicating that she knew in advance there was a bump in the road. *Id*. Parsons' testimony is sufficient evidence to indicate that she was deliberately indifferent to a serious risk of harm posed to the students on the bus since she indicates that she knew that road was "terrible" and that she was specifically aware of that bump in the road. (ECF No. 36 at 21-24); *see Jane Doe*, 954 F.3d 925, 934 (6th Cir. 2020) (noting that to demonstrate deliberate indifference to an individual's rights, "a public official must know of more than a *general* risk of harm. The official must know of the *specific*

---

[1] *See e.g. Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 911 (6th Cir. 1995) (finding no special relationship which would be sufficient to hold school district liable for bus driver's negligence where there was no law requiring plaintiff's child to take the school bus).

risk that later develops"). Furthermore, Parsons' testimony regarding her knowledge that the bump was in the road, combined with the video footage of the bus incident, as well as Parsons' statements made immediately after the incident could be reasonably construed by a jury as evidence of Parsons' intent to deliberately injure Dahlia. *See e.g., Nolan by Nolan v. Memphis City Sch.*, No. 04-3047-D/P, 2006 WL 8439292, at \*5 (W.D. Tenn. Oct. 12, 2006) (finding genuine issue of material fact as to whether basketball coaches violated student's substantive due process rights where coach physically abused student player with paddle during practice and noting that verbal abuse and derogatory comments made by coach were indicative of intent); *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (assuming that plaintiff suffered constitutional injury sufficient to survive summary judgment where plaintiff alleged she was choked and thrown to ground by teacher for forgetting a pencil).

Defendants also argue that none of the facts here demonstrate that Parsons' conduct is "conscience-shocking," unlike in *Webb v. McCullough*, 828 F.2d 1151 (6th Cir. 1987). As discussed above, in *Webb*, the Sixth Circuit determined that a genuine issue of fact existed as to whether the blows administered by a teacher to a student on a school trip were "shocking to the conscience" where the blows were not "struck in the school context, where the need for immediate disciplinary control described … is at its greatest" and where it was "possible that the blows were not disciplinary in nature." *Id*. at 1159. Both of those important factors exist here where Plaintiffs allege that Parsons intentionally drove her vehicle into a bump, with the intent to hurt the students on the bus, outside of school hours, with no disciplinary purpose, and that Dahlia was seriously injured as a result. A trier of fact could reasonably conclude that such acts were a "brutal and inhumane abuse of . . . official power, literally shocking to the conscience." *Id*. Accordingly, summary judgment is inappropriate on this claim since there is a genuine

dispute of material fact as to whether Parsons intended to injure Dahlia by purposefully driving into the bump on the road.

### 2.  Count 2 – Equal Protection

#### a.  *Clearly Established*

In count two of their complaint, Plaintiffs allege that Defendants violated the equal protection clause by disciplining Dahlia but not her white classmate who engaged in the same conduct. Plaintiffs point to *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 571 (6th Cir. 2011) for support that the law is clear that enforcing a code of conduct more stringently against one group of students because of their race violates the equal protection clause. (ECF No. 46 at 13-14). In *Heyne*, the Sixth Circuit denied defendants' motion to dismiss and determined that a student's right not to be disciplined on the basis of his race was clearly established where a white student alleged that the principal had instructed staff at the school to enforce a code of conduct more leniently against black students than white students. *Id*.

Defendants argue that *Heyne* is inapplicable since there is "no evidence that would support any determination that discipline was issued to Dahlia because of her race" and there is no caselaw to support that the equal protection clause is violated absent a showing of discriminatory purpose or effect.  (ECF No. 50 at 12). Again, Defendants conflate the analysis for clearly established law with the analysis as to whether a constitutional violation has occurred. Whether there is evidence to support that the constitutional violation occurred goes to the first prong of the analysis and not the second prong, which merely requires that the constitutional violation alleged be clearly established. Here, Plaintiffs allege that Defendants intentionally discriminated against Dahlia by disciplining her and not a white student for engaging in the same conduct. Consequently, *Heyne* is applicable here. The Sixth Circuit has confirmed that

discriminatory enforcement of school policies and practices violates the well-established equal protection right to not be discriminated against in the school setting. *See e.g*., *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1360 (6th Cir. 1996) (noting that "Equal Protection Clause requires public institutions to treat similarly situated individuals in a similar manner."). Hughes and Parsons would be on notice that the intentional application of a disciplinary rule or code of conduct to a student on the basis of race is unconstitutional and violates the equal protection clause.

As to Moore, Plaintiffs concede that he was not aware that there was a white student on the bus engaging in the same conduct as Dahlia when he called her into his office. (ECF No. 46 at 15). Plaintiffs argue instead that he can nonetheless be held liable under a cat's paw theory based on Parsons' racial animus. *Id.* The cat's paw theory, also known as the "rubber-stamp" theory of liability, emerged from the employment law context and supports a finding of liability (even where the supervisor who is the ultimate decision maker lacked discriminatory intent) where a supervisor approves or "rubber stamps" the recommendation of a biased employee. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011) (determining that employer can be held liable under cat's paw theory even where the ultimate decision maker was not motivated by discriminatory animus where a supervisor's biased report was a factor in the termination decision); *Arendale v. City of Memphis*, 519 F.3d 587, 604 fn. 4 (6th Cir. 2008). In *Staub*, the Supreme Court expressly approved this theory as one based on agency principles, noting that the employer is "at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision." 562 U.S. at 421 (2011).

The cat's paw theory of liability has been tacitly adopted by the Sixth Circuit in the §

1983 context and has been expressly adopted in the Title VII, § 1981, and § 1983 contexts by

other circuits.[2] In *DeNoma*, the Sixth Circuit noted that to establish liability based on a cat's paw

theory, a plaintiff must demonstrate that:

> a supervisor performs an act motivated by [prohibited] animus that is *intended* by the
> supervisor to cause an adverse employment action, and if that act is a proximate cause of
> the ultimate employment action, then the employer is liable

*DeNoma v. Hamilton County Ct. of Com. Pleas*, 626 Fed. Appx. 101, 106 (6th Cir. 2015)

(unpublished) (internal quotation marks omitted) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411,

421 (2011))

Here, it is alleged that Moore issued Dahlia a detention because she received a conduct

form that was issued based on racially discriminatory animus. Accordingly, it is clearly

established that a supervisor acting without discriminatory animus can be held liable for

disciplining a student "when discrimination is a motivating factor in his doing so." *Staub v.*

*Proctor Hosp.*, 562 U.S. 411, 421 (2011). The fact that there is no evidence demonstrating that

Moore was aware of another white student standing on the bus is irrelevant since it is Parsons'

discriminatory animus that motivated Moore's decision to discipline Dahlia.

---

[2] *See DeNoma v. Hamilton Cty. Court of Common Pleas*, 626 F. App'x 101, 106 (6th Cir. 2015)
(applying cat's paw theory of liability to find genuine issues of material fact existed on § 1983
gender discrimination in violation of equal protection clause claim); *Chattman v. Toho Tenax
Am., Inc.*, 686 F.3d 339, 351 (6th Cir. 2012) (determining that plaintiff could rely on cat's paw
theory of liability for Title VII race discrimination claims); *Campion, Barrow & Assocs., Inc. v.
City of Springfield, Ill.*, 559 F.3d 765, 771 (7th Cir. 2009) (noting availability of cat's paw
argument but determining that plaintiff's failure to develop that theory was fatal to his § 1983
action); *Amini v. City of Minneapolis*, 643 F.3d 1068, 1075 (8th Cir. 2011) (noting, in § 1981
race discrimination action that if "a non-decision-maker performs an act motivated by a
discriminatory bias that is intended to cause, and that does proximately cause, an adverse
employment action, then the employer is liable under the cat's paw theory of liability"); *Quinn v.
Monroe Cty.*, 330 F.3d 1320, 1327 (11th Cir. 2003) (noting in § 1983 retaliation action a
"decision-maker may serve as the conduit of the subordinate's improper motive, for example, if
he merely "rubber-stamps" the recommendation of a subordinate.").

### b. *Violation of Constitutional Right*

Defendants argue that summary judgment is also proper on Plaintiffs' equal protection claims since there is no evidence of discriminatory effect or purpose. (ECF No. 40 at 10). According to Defendants, Plaintiffs cannot show discriminatory effect because Dahlia was not treated differently from any similarly situated students on the basis of race. *Id*. Defendants argue that Dahlia was not similarly situated to the white student on the bus who was also standing because that student was not injured as a result of the bus accident. *Id*.

Plaintiffs oppose this argument, clarifying that in addition to their disparate treatment claim based on the discipline Dahlia was subjected to following the bus accident, they are also asserting a disparate treatment claim on the basis of the application of excessive force on the bus. (ECF No. 46 at 9). Plaintiffs argue that "it makes little sense to argue that Dahlia and her white classmate were not similarly situated because Dahlia was discriminated against [through being injured on the bus] and her white classmate was not." *Id*. As to the equal protection claim based on the Dahlia's being disciplined, Plaintiffs add that it is not a relevant distinction for purposes of the similarly situated analysis that Dahlia was injured but the other student was not. *Id*. at 9-10.

The Equal Protection Clause prohibits government actors from treating similarly situated individuals differently. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To establish a violation of the Equal Protection Clause under a selective enforcement theory, Plaintiffs are required to show discriminatory effect and discriminatory purpose. *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 533–34 (6th Cir. 2002).

To show discriminatory effect on the basis of race, a plaintiff can name a similarly situated individual who was not subjected to the same enforcement scheme. *Id.* at 534. A plaintiff is not required to show "exact correlation" to show that she is similarly situated to another individual but is required to show similarity in all relevant respects. *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012). The "similarly situated" inquiry is often a fact issue for the jury but may be determined at the summary judgment stage if it is clear that "no reasonable jury could find that the similarly situated requirement has been met." *Ryan v. City of Detroit*, 174 F. Supp. 3d 964, 976 (E.D. Mich. 2016), *aff'd*, 698 F. App'x 272 (6th Cir. 2017) (citing *Loesel*, 692 F.3d at 463).

To show discriminatory purpose, a plaintiff must demonstrate that an official "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.'" *Id.* (internal citation and quotation marks omitted). The process for determining "whether official action was motivated by intentional discrimination 'demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" *Id.* (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 266, (1977)). Direct evidence of intent is not necessary, and an "invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the [conduct] bears more heavily on one race than another." *Washington v. Davis*, 426 U.S. 229, 242 (1976). Further, it is "well settled law that departures from established practices may evince discriminatory intent." *Shively v. Green Local Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 357 (6th Cir. 2014) (citing *Village of Arlington Heights,* 429 U.S. at 267).

As to the disparate use of force claim, Plaintiffs have presented no evidence showing that Parsons applied force to Dahlia and not the white student on the basis of race. As Defendants

aver, the video footage of the accident shows that both Dahlia and the white student were both impacted by Ms. Parsons' driving. (Video Footage, ECF No. 51); *see Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (noting that "threshold element of an equal protection claim is disparate treatment") (internal quotation marks omitted). Accordingly, Defendants are entitled to summary judgment on the disparate use of force claim since there is no evidence of disparate treatment in the application of force.

Plaintiffs also argue that Dahlia was treated differently from the other white student on the bus because Dahlia was disciplined for standing on the bus while the other student was not. (ECF No. 46 at 9). Defendants do not contest the fact that Dahlia was issued a Bus Conduct Form and the white student was not for the same behavior on the bus. Instead, Defendants argue that the Bus Conduct Form written up by Parsons at Hughes' instruction was not a disciplinary action and that Dahlia was not given a detention. (ECF No. 50 at 6-8). Plaintiffs counter that they have presented evidence that Dahlia was disciplined through Dahlia and Ms. Brazel-Hill's deposition testimony that Dahlia was given a detention as a result of the Bus Conduct Form. (ECF No. 46 at 13). Additionally, Plaintiffs argue that whether the Bus Conduct Form is disciplinary is a disputed fact since the issuance of the Bus Conduct Form led to Dahlia's verbal reprimand and a detention. (ECF No. 46 at 13).

This Court will first address Defendants' argument that the issuance of the Bus Conduct Form is not a disciplinary action. The Equal Protection Clause prohibits unequal treatment of similarly situated individuals. Plaintiffs are not required to prove that the Bus Conduct Form is a disciplinary measure, since differential treatment on the basis of race by school officials is a constitutional violation, and there is no exception for "de minimus violations." *See Billings v. Madison Metro. Sch. Dist.*, 259 F.3d 807, 814 (7th Cir. 2001) (finding teacher was not entitled to

qualified immunity on equal protection clause claim for temporarily using racially based seating assignments noting that "[a]lthough the effect on the student from this relatively minor and transitory discrimination might well have been minimal . . . our faithfulness to constitutional principles does not permit us to overlook it or to declare it a de minimis matter."); *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 712 (9th Cir. 1997) ("We conclude that there is no *de minimis* exception to the Equal Protection Clause. Race discrimination is never a 'trifle.'"). Furthermore, even non-disciplinary actions that are intended to criticize or embarrass a student and that are done with discriminatory intent are sufficient to state an equal protection claim. *See Fennell v. Marion Indep. Sch. Dist.*, 963 F. Supp. 2d 623, 635 (W.D. Tex. 2013) (determining that student who had been criticized and embarrassed by school official for wearing her hair in braids had stated viable equal protection claim on basis for racial discrimination). Here, Parsons' issuance of the Bus Conduct Form had some punitive element and was at least intended to criticize Dahlia. If it was issued to Dahlia because of her race, then its issuance was a violation of the Equal Protection Clause.

With respect to showing discriminatory effect, Plaintiffs have presented sufficient evidence to show that Dahlia and the white student were treated differently despite being similarly situated in all relevant respects. The video footage of the incident shows that Dahlia and the white student were both standing during the bus ride and that both were seated when Parsons hit the bump. (ECF No. 51). Both students were also impacted by Parsons' driving and it was merely fortuitous that Dahlia was severely injured, and the white student was not, since at the moment the bus hit the pothole both students were lifted into the air. *Id.* Defendants do not explain, nor is it readily apparent, why it is a relevant difference for purposes of administering discipline for a violation of a school policy that one student was injured as a result of the bus's

hitting a bump and the other was not. *See Wayne v. Shadowen*, 15 F. App'x 271, 284 (6th Cir. 2001) (noting that student who posed "unique disciplinary and control challenges to the school's administrators" was not similarly situated to typical student at school and that plaintiffs failed to produce evidence that student's behavior typifies the conduct of the average student); *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 571 (6th Cir. 2011) (noting that "[d]irect or circumstantial evidence that a student's race motivated school officials' actions may establish an Equal Protection Clause violation."). Accordingly, a genuine issue of fact exists since a reasonable jury could determine that Dahlia and the white student were similarly situated in all relevant respects.

Additionally, Plaintiffs have made a sufficient showing of discriminatory purpose as to Parsons, Hughes, and Moore. Defendants argue that there is no evidence of Parsons' intent and that it is "undisputed" that Hughes and Moore were unaware of any student other than Dahlia standing on the bus while it was in motion in violation of school safety rules. (ECF No. 40 at 11). Plaintiffs argue that Parsons' discriminatory purpose can be inferred through her decision to issue only Dahlia a Bus Conduct Form for standing on the bus when she was aware a white student did the same thing. Plaintiffs dispute that Hughes was unaware that there was a white student engaging in the same behavior and argue that he urged Parsons to issue the Bus Conduct Form after viewing the video footage of the accident. (ECF No. 46 at 14). Plaintiffs concede that there is no evidence that Moore was aware of another student engaging in the same conduct on the bus. *Id*. at 15.

As the Sixth Circuit observed in the context of a school's failure to enforce a school policy related to student conduct, "it is well settled law that departures from established practices may evince discriminatory intent." *Shively v. Green Local Sch. Dist. Bd. of Educ.*, 579 F. App'x

348, 357 (6th Cir. 2014). Here, a policy existed that prohibited students from standing on the bus while it is in motion. Parsons only enforced that policy as to a black student, even though a white student engaged in the same conduct. The departure from uniformly enforcing that policy against two similarly situated students is sufficient circumstantial evidence of discriminatory intent. *See Club Xtreme, Inc. v. City of Wayne*, No. 07-15308, 2010 WL 1626415, at *13 (E.D. Mich. Apr. 21, 2010)  (denying summary judgment finding that plaintiffs had presented sufficient circumstantial evidence of discriminatory purpose where city began to target club for additional enforcement and legal scrutiny of its licenses after its clientele became primarily black individuals despite the fact that city denied knowing the race of club's patrons); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 (1977) (noting "[p]roof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment."); *Vill. of Arlington Heights*, 429 U.S. at 253 (1977) (noting that racially discriminatory intent can be shown through "disproportionate impact" as well as "departures from normal procedures."); *see also Bey v. Falk*, 946 F.3d 304, 323 (6th Cir. 2019) (Clay, J., dissenting) (noting "direct evidence of racial discrimination is rarely apparent—those who violate equal protection rights know better than to admit to their nefarious motives"); *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 95 F. Supp. 2d 723, 737 (N.D. Ohio 2000), *aff'd*, 308 F.3d 523 (6th Cir. 2002) (noting "inferential evidence of a discriminatory practice is more than enough" to show discriminatory intent).

Additionally, viewing the evidence in the light most favorable to Plaintiffs, Defendants' claim that there is no evidence as to Hughes' intent is without merit. The deposition testimony and text messages cited to by Plaintiffs demonstrate there is a genuine issue of material fact as to whether Hughes was aware that there was also a white student violating the policy of not

standing on the bus when he chose to recommend that a Bus Conduct Form be issued to Dahlia only.

Furthermore, as indicated above, Plaintiffs need not show that Moore had discriminatory intent to succeed in holding him liable pursuant to a cat's paw theory of liability. All that is necessary is that Plaintiffs demonstrate that Moore relied on Parsons' Bus Conduct Form to issue a detention. Defendants argue that there is no evidence that Moore issued Dahlia a detention, but Plaintiffs point to deposition testimony indicating that there is a genuine dispute of fact on this issue. (ECF No. 46 at 13). Furthermore, it is undisputed that Moore was aware of the Bus Conduct Form, that he called Dahlia in to his office to discuss her conduct on the bus, and that he did not similarly call in the other student who was also standing on the bus. (ECF No. 40 at 5-6).

Accordingly, summary judgment is inappropriate on Plaintiffs' Equal Protection Clause claim as to Parsons, Hughes, and Moore since there are genuine issues of fact as to this claim.

### 3.   Count 3 – First Amendment Retaliation

#### a.   *Clearly Established*

Defendants argue they are entitled to summary judgment on the First Amendment retaliation claim since Plaintiffs do not cite any caselaw "that would clearly establish that Ms. Brazell-Hill's First Amendment rights were violated." (ECF No. 50 at 12). Plaintiffs, however, argue that Dahlia was disciplined mere days after Ms. Brazel-Hill complained about her daughter's injury due to Parsons' driving, and recite the elements of a First Amendment claim for retaliation, citing to *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 581 (6th Cir. 2012). (ECF No. 46 at 10). Defendants again focus their arguments on the lack of evidence to support Plaintiffs' claims as opposed to any contradictory case law as to whether the conduct alleged violated a clearly established right. (ECF No. 40 at 14).

In the Sixth Circuit, it is clearly established that parents have a right to be free from retaliation for exercising their First Amendment rights to complain about and criticize school officials. *See Wenk v. O'Reilly*, 783 F.3d 585, 599 (6th Cir. 2015) ("the heart of a First Amendment retaliation claim, which we have reaffirmed numerous times before 2011, is that [a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.") (internal citations and quotation marks omitted). In *Wenk*, the parents of a student advocated for a change in their daughter's education plan. *Id.* In retaliation, a school official filed a child abuse report which the *Wenk* plaintiffs claimed was false. *Id.* The Sixth Circuit determined that a reasonable official would understand that actions taken against a parent in retaliation for speech violates the parents' First Amendment rights, even if the underlying action is permissible if not taken for retaliatory purposes. *Id*. at 600. Here, just as in *Wenk*, reasonable school officials understand that disciplining a student, if taken for the purpose of retaliating against the student's parent for her speech, violates that parent's First Amendment rights.

### b. *Violation of Constitutional Right*

Plaintiffs clarify that their First Amendment retaliation claim relates solely to Ms. Brazell-Hill's protected speech and the retaliation she alleges her daughter faced after complaining about Ms. Parsons' conduct. (ECF No. 46 at 10). Plaintiffs argue that Ms. Brazell-Hill engaged in protected speech when she texted Hughes to complain about Parsons' driving and when she complained publicly about Parsons' conduct. (ECF No. 11 at 6-7). Defendants concede that Ms. Brazell-Hill's speech is protected, but argue that summary judgment is proper on her claim because no adverse action was taken and even if it is assumed that Dahlia was disciplined, there is no evidence that she was disciplined on account of Ms. Brazell-Hill's

24

speech. (ECF No. 40 at 13). Plaintiffs respond that there is a fact issue about whether the discipline administered to Dahlia was an adverse action. Plaintiffs add that they can demonstrate causation through temporal proximity between the protected speech and the adverse action. (ECF No. 46 at 11-12).

First Amendment retaliation claims are analyzed under a burden-shifting framework which requires a plaintiff to first make a prima facia case of retaliation. *Wenk v. O'Reilly*, 783 F.3d 585, 593 (6th Cir. 2015). To make out a prima facia claim for First Amendment retaliation, a plaintiff must show:

> [s]he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage in that conduct; [and] (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [her] protected conduct."

*Id.* (*citing Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999) (en banc)). Once a plaintiff makes out a prima facie case, the defendant must show that they would have taken the same action in the absence of the protected conduct. If a defendant can do so, then the summary judgment is warranted only if "in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Id.* at 594.

To be actionable, an adverse action taken against a plaintiff must "deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Unlike the Equal Protection Clause, First Amendment retaliation claims must be more than a de minimus intrusion on the individual's constitutional right since the adverse action standard "is intended to weed out only inconsequential actions." *Id.* at 398. The inquiry into whether "a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). Furthermore, it is only in rare circumstances when the adverse conduct at

issue is so clearly "inconsequential" that it would not merit sending a plaintiff's claim to the jury. *See id.* at 603 (noting "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury"). Where disciplinary measures taken against a student are motivated by constitutionally protected speech, "they would have the tendency to chill such speech." *Henley v. Tullahoma City Sch. Sys.*, 84 F. App'x 534, 540 (6th Cir. 2003) (determining that disciplinary suspensions and other actions constituted adverse actions actionable under the First Amendment).

Here, Plaintiffs have set forth evidence that Dahlia was issued a Bus Conduct Form, called into Mr. Moore's office for a verbal reprimand, and that Dahlia received a detention. Defendants dispute that Dahlia was given a detention, arguing that there is no evidence to support it. (ECF No. 40 at 12). At summary judgment, however, this Court must view the evidence in the light most favorable to the non-moving party. Plaintiffs cite to both Dahlia and Ms. Brazell-Hill's testimony as evidence that a detention was given. Construing the evidence in the light most favorable to Plaintiffs, there is a genuine issue of fact as to whether Dahlia was issued a detention and whether this detention in combination with the other actions taken against Dahlia constituted adverse actions.

Defendants also dispute that the alleged adverse actions were causally related to Ms. Brazell-Hill's protected speech. Defendants claim there is no evidence that Parsons, Hughes, or Moore disciplined Dahlia on account of her mother's speech. (ECF No. 50 at 9). Plaintiffs argue that temporal proximity is sufficient to demonstrate causal connection. (ECF No. 46 at 11-12). The Sixth Circuit has noted that "temporal proximity alone can, in certain circumstances, suffice to show a causal connection in a retaliation case." *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 305–06 (6th Cir. 2012) (noting that when an adverse action is taken very close in time after

an official learns of protected activity, "such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation"); *see also Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010) (noting "our case law can fairly be characterized as recognizing the possibility that, on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive").  There are, however, limits to using temporal proximity, particularly where "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action." *Id*. Here, temporal proximity can be used to demonstrate causation since the alleged adverse actions were taken merely two days after the protected speech occurred.

Defendants also argue that even if Plaintiffs can make out a prima facie case of retaliation, summary judgment is nonetheless proper since Dahlia would have been disciplined for breaking a school rule even in the absence of Ms. Brazell-Hill's protected speech. (ECF No. 50). Summary judgment is proper on this claim only if "no reasonable juror could fail to return a verdict for the defendant." *Wenk,* 783 F.3d at 594. Plaintiffs, however, have introduced evidence that another student was not disciplined for standing on the bus. A reasonable jury could conclude that the reason that Dahlia was disciplined but not the white student was because Dahlia's mother engaged in protected speech. There remain significant factual disputes as to why Dahlia was disciplined but not the other student who broke the same rule prohibiting standing on a moving bus. Accordingly, summary judgment is not warranted on Plaintiffs' First Amendment retaliation claim.

### B.  State Law Claims against Parsons and the Board

### 1.  Parsons' Statutory Immunity as to All State Law Claims

Defendants also move for summary judgment on the state law claims arguing that the Board[3] and Parsons are immune from these claims under Ohio law which provides immunity from liability to political subdivisions and the employees of political subdivisions in their individual capacities.[4] (ECF No. 40 at 17). Plaintiffs agree that the Board is immune on the state law claims (except the negligence claim), instead arguing that Parsons is not immune from these claims because her conduct was wanton and reckless. (ECF No. 46 at 16-17).

Ohio Rev. C. § 2744.03(A)(6) provides immunity from liability in the individual capacity for employees of political subdivisions, unless the "employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities" or the "employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Oh. Rev. C. § 2744.03(A)(6)(a-b). Defendants argue there is no evidence to support that either exception applies. Plaintiffs argue that evidence of Parsons' wanton and reckless conduct exists since Parsons admitted knowing that the road was "terrible," knew in advance there was a bump in the road, but did not alter her driving and made the "conscious decision to accelerate" despite her knowledge of the road's conditions. (ECF No. 56 at 17). Plaintiffs add that Parsons' conduct after hitting the bump also exhibits "malice, recklessness, wantonness and willfulness" since Parsons laughed, did not escort Dahlia off the bus, and exhibited indifference to Dahlia's crying after being injured. *Id*.

---

[3] Defendants do not move for summary judgment against the Board on the state law negligence claim, acknowledging there are genuine issues of material fact on that claim. (ECF No. 40 at 1).
[4] The state law claims do not implicate either Hughes or Moore.

The Supreme Court of Ohio has clarified that "[w]anton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 983 N.E.2d 266, 274, 134 Ohio St.3d 380, 389, 2012 -Ohio- 5711, ¶ 33 (Oh. 2012). Reckless conduct, on the other hand, "is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. " *Id*. at ¶ 34. The terms, as used in the immunity statute, are not interchangeable. *Id*. ¶ 40.  The determination of whether conduct is reckless or wanton is "a question generally for the jury." *Thompson v. Smith*, 899 N.E.2d 1040, 1051, 178 Ohio App.3d 656, 670, 2008 -Ohio- 5532, ¶ 67 (Oh. App. 11 Dist. 2008); *see also Fabrey v. McDonald Village Police Dept.*, 639 N.E.2d 31, 35, 70 Ohio St.3d 351, 356 (Oh. 1994) ("the issue of wanton misconduct is normally a jury question.").

Here, Plaintiffs have presented evidence in the form of a video of the accident as well as deposition testimony that indicate that Ms. Parsons knew that the road was "terrible," knew that the bump in the road existed, and took no actions to drive in a manner responsive to the conditions on the road in order to protect the students on the bus. (ECF No. 36; No. 51). This is sufficient to create a genuine issue of material fact as to whether Ms. Parsons acted in a reckless manner since it demonstrates that Ms. Parsons was aware of risky road conditions and did nothing to alter her driving to ensure the students on her bus would not be injured. *See Chavalia v. City of Cleveland*, 87 N.E.3d 705, 715, 2017 -Ohio- 1048, ¶ 33 (Oh. App. 8 Dist. 2017) (noting "a trial court may not grant summary judgment on the basis of R.C. 2744.03(A)(6) immunity unless, based on the evidence, reasonable minds could conclude only that the employee did not act in a wanton or reckless manner" and determining issue of fact existed as to

whether defendants acted in wanton or reckless manner by disregarding known risk of harm). Accordingly, Parsons is not entitled to immunity on the state law claims.

### 2. Count 5 – Assault & Count 6 – Battery

Parsons also moves for summary judgment on the state law battery and assault claims brought against her, arguing that these claims fail as a matter of law because Parsons never physically touched Dahlia nor intended to make any contact with her whatsoever. Plaintiffs argue that Defendants' argument is "nonsense" since an individual can be held liable for assault or battery when they attack someone with a physical object, even if they do not make physical contact with the victim. (ECF No. 46 at 17).

In Ohio, to succeed on a claim for assault and battery, a plaintiff must demonstrate that a defendant "unlawfully touched him or her with the intent of inflicting injury or of at least creating fear of injury." *Blankenship v. Parke Care Centers, Inc.*, 913 F.Supp. 1045, 1052 (S.D.Ohio,1995). To establish battery, there must be "intentional, unconsented-to contact with another" that is "harmful or offensive." *Snyder v. Turk*, 627 N.E.2d 1053, 1057, 90 Ohio App.3d 18, 23 (Oh. App. 2 Dist. 1993). To establish assault, there must be an intentional attempt to "harm or offensively touch another that reasonably places the other in fear of such contact." *Turek v. Phelps*, 2016 -Ohio- 7552, ¶ 31, 2016 WL 6464978, at *4 (Oh. App. 11 Dist. 2016) (finding genuine of fact that was reasonably submitted to jury where plaintiff claimed he did not have requisite intent to contact where he tossed a half-empty beer can which hit plaintiff). The intent to inflict injury "may be inferred from conduct which is wantonly or grossly negligent" but "conduct which is merely negligent will not alone suffice to sustain an action for assault and battery." *Blankenship*, 913 F.Supp. at 1052.

Defendants' argument is essentially that Ms. Parsons cannot be deemed to have the

requisite intent to commit battery since her driving negligently "is not intentional contact." (ECF No. 50 at 14). As this Court has determined above in denying Parsons statutory immunity, there is a dispute of fact as to whether Parsons intentionally drove her vehicle in a manner calculated to cause harm to Dahlia and the other student on the bus. As Plaintiffs have pointed out, the fact that Ms. Parsons is driving a bus and did not make physical contact with Dahlia is irrelevant if Ms. Parsons drove the bus into the pothole with the intent to harm Dahlia. Accordingly, summary judgment is inappropriate on the battery claim since Plaintiffs have introduced evidence that Ms. Parsons intended to drive the bus into the pothole. Summary judgment is proper, however, on the assault claim since Plaintiffs have presented no evidence that Dahlia reasonably apprehended or feared that Ms. Parsons would drive the bus into the pothole.

### 3. Count 7 – Intentional Infliction of Emotional Distress

Defendants also move for summary judgement on the intentional infliction of emotional distress ("IIED") claim, arguing that there is no evidence that Ms. Parsons engaged in the type of "extreme and outrageous" conduct that is necessary to support such a claim. (ECF No. 40 at 19-20). Plaintiffs oppose this arguing that Parsons' conduct, as revealed in the video recording, meets the standard under Ohio law for "conduct that is truly outrageous, interoperable, and beyond the bounds of decency." (ECF No. 46 at 18).

In Ohio, the tort of intentional infliction of emotional distress permits a plaintiff to hold a defendant liable for "extreme and outrageous conduct intentionally or recklessly causes serious emotional distress." *See v. Cleveland Clinic Foundation*, 222 F.Supp.3d 569, 576 (N.D.Ohio, 2016). To prevail, the plaintiff must prove: "(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress."

*Id.* The emotional distressed alleged to be caused by defendant's conduct must be serious. *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America*, 453 N.E.2d 666, 671, 6 Ohio St.3d 369, 374 (Oh. 1983), *abrogated on other grounds by Welling v. Weinfeld*, 113 Ohio St. 3d 464, 866 N.E.2d 1051 (Oh. 2007).

Defendants and Plaintiffs dispute whether Parsons conduct is sufficiently "extreme and outrageous." This Court need not address whether the conduct at issue was sufficiently extreme and outrageous, however, because Plaintiffs have failed to present any evidence that Dahlia suffered a serious emotional injury or distress. Ohio courts require that "in a case for intentional infliction of emotional distress [a plaintiff] must present some evidence beyond the plaintiff's own testimony that he or she has experienced emotional distress due to the defendant's actions." *Buckman-Peirson v. Brannon*, 822 N.E.2d 830, 840, 159 Ohio App.3d 12, 25, 2004 -Ohio- 6074, ¶ 56 (Oh. App. 2 Dist. 2004) (collecting cases). Here, Plaintiffs have not provided any testimony that Dahlia suffered any emotional injury as a result of the accident, not even Dahlia's own testimony. While expert testimony is not an absolute requirement, courts in Ohio have observed that "expert medical testimony can assist the judicial process in determining whether the emotional injury is indeed, serious" as well as helping to establish the "validity of the claim of serious emotional distress." *Clay v. Shriver Allison Courtley Co.*, 118 N.E.3d 1027, 1039, 2018 -Ohio- 3371, ¶ 56 (Ohio App. 7 Dist., 2018). Plaintiffs' failure to provide any evidence—not even testimony from Dahlia or her mother—to support their claim of a serious emotional injury caused by Parsons' conduct is baffling. Accordingly, because Plaintiffs have not produced any evidence to establish the third prong of an IIED claim, summary judgment on this claim is **GRANTED**.

## IV.    CONCLUSION

The Court hereby **GRANTS in part** and **DENIES in part** Defendants' Partial Motion for Summary Judgement (ECF No. 40). Defendants' Motion for Summary Judgment is **GRANTED** as to:

- Counts 1, 2, 3, 5, 6, and 7 as against the Morgan Local School Board of Education;

- Counts 5 and 7 as to Parsons

Summary Judgment is **DENIED** on the remainder of Defendants' Motion, and the following claims remain for trial:

- Counts 1 and 6 as to Parsons

- Counts 2 and 3 as to Parsons and Hughes and Moore

- Count 4 as to Parsons and the Morgan Local School

**IT IS SO ORDERED.**

     **___s/Algenon L. Marbley_____**
     **ALGENON L. MARBLEY**
     **CHIEF UNITED STATES DISTRICT JUDGE**


**DATED:  August 17, 2020**